AUGUST *et al. v.* FOURTH NAT. BANK OF NEW YORK.

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. BANKS AND BANKING—PAYMENT OF CHECK ON FORGED INDORSEMENT—BURDEN OF PROOF.
   In an action against a bank for the amount of a check cashed by the bank on a forged indorsement, where plaintiff had rejected such check when returned from the bank, and disputed the account, the burden of proof is on the defendant to show that the indorsement is genuine.

2. SAME—PAYMENT OF CHECK ON FORGED INDORSEMENTS—FAILURE TO MAKE OBJECTION ON DISCOVERING FORGERY—BURDEN OF PROOF.
   In an action against a bank for the amount of certain checks cashed by the bank on forged indorsements, where the checks were properly returned to plaintiff by defendant, with a statement of account, and retained by him for a long time, without objection, the burden is upon plaintiff to show the forgery, even though plaintiff's clerk, who had charge of the returned checks, was himself the forger, and had concealed the checks when returned from the bank.

3. ACTIONS—ELECTION—SUING RECEIPTOR OF MONEY PAID ON FORGED CHECKS.
   A depositor of funds in a bank, who has sued the fraudulent receiptor of money paid on checks with forged indorsements, is not thereby precluded by the doctrine of election of remedies from bringing an action against the bank for the money thus paid out.

Appeal from circuit court, New York county.

Action by Simon August and others against the Fourth National Bank of New York City, to recover an alleged balance due on a deposit account. A judgment for defendant was set aside by the court, and defendant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and MACOMBER, JJ.

*David Wilcox* and *Samuel Untermeyer,* for appellant. *Horace E. Deming,* for respondents.

VAN BRUNT, P. J. This action was brought to recover an alleged balance due from the defendant to the plaintiffs upon a deposit account which the plaintiffs kept with the defendant. The defendant denied that any sum was due, and set up five distinct statements of the accounts between the parties followed by the payment of the balances found due, and alleged that the balance in question arose from the payment by defendant of 12 certain checks drawn by plaintiffs, and claimed by them to have been insufficiently indorsed, and that the same were in fact properly indorsed, or else their payment was due to the plaintiff's negligence; and, further, that the plaintiffs had ratified the indorsements by suing the persons to whom the checks were paid for the amount thereof as plaintiffs' money. Upon the trial it was conceded that the balances involved arose from the payment of the 12 checks mentioned in the answer, the plaintiff's claim being that the indorsements were forged by their book-keeper, Fischel. All these checks were shown to have been returned by the defendant to the plaintiffs when their pass-book was balanced from time to time, and such checks and pass-book were retained by the plaintiffs, without objection to the charge of any of these checks, for a considerable length of time, except in the case of one check dated August 19, 1885, which was for the amount of $1,486.55. None of the checks were produced upon the trial except the one above mentioned. It appeared during the progress of the trial that Fischel was accustomed to draw the checks of the plaintiffs, and have them signed by a member of the firm or by a Mr. Klotz, duly authorized to make such signature, and that upon the return of the vouchers from the bank upon the balancing of the bank-book, such vouchers came into Fischel's possession, and he examined the bank account, and that he took out from among the vouchers the 11 fraudulent checks not produced, the twelfth check having been returned from the bank subsequent to the time of the discovery of Fischel's frauds, and his flight. The jury found a general verdict in favor of the defendant. Upon the motion to set aside the verdict the same was granted, the judge remarking that a right of recovery existed as to one of the checks, at least, referring to the check already mentioned and which was produced upon the trial. The defendant has appealed from this order, and the question presented upon this appeal is whether the court was justified in setting aside the verdict of the jury.

It is well settled that the verdict of a jury cannot be interfered with simply because the judge who tried the cause might entertain a clear and decided conviction that the truth is upon the side of the case opposed to the verdict of the jury; and that when the inferences to be drawn from the testimony are not clear and uncontrovertible, and men of ordinary judgment and discretion may differ as to their significance, it is the exclusive province of the jury to pass upon the questions involved; and that where there is conflict of testimony, the verdict of a jury can only be set aside when the case itself presents evidence that the jury must have been influenced by prejudice, passion, or mistake. There frequently arise during the progress of a trial circumstances which are within the knowledge of a trial judge, and by which the jury are improperly influenced in the rendition of their verdict, when it becomes the duty of the court to set aside the verdict because it has been influenced by prejudice, passion, or mistake. In the case at bar, however, there is no pretense that any of these elements arose which called for the interposition of

the court. The single question which is presented upon this appeal is, was there sufficient uncontroverted evidence to authorize the plaintiffs to recover any amount whatever?  This question seems to us to be largely governed by the burden of proof.  It is well settled that the entry of debits for payments made in a bank-book and striking a balance is undoubtedly the statement of the account, and the delivery of it to the dealer, and his retention of it without objection, as in other cases of accounts rendered, gives to this statement of accounts the character of a stated account.  When he, the dealer, failed to examine it, the whole consequence was that the burden of proof was shifted, and he became bound to show that the account was wrongly stated.  *Weisser* v. *Denison*, 10 N. Y. 81.  Therefore, in the case at bar, in order to enable the plaintiffs to recover, they having received the bank-books which have been balanced, and in which these checks, forming the subject-matter of this suit, had been entered, and having retained at least 11 of them without objection, the burden of proof was thrown upon them, as to these 11 checks, to show affirmatively that the money had been wrongfully paid out; or, in other words, that the checks had either been fraudulently altered or the indorsements forged.  The fact that the forger was their own clerk, and that in the course of business these checks came into his possession, and he concealed them from the eyes of his employer by withdrawing them from the bundles of vouchers, in no way alters this rule.  According to one of the plaintiffs' own witnesses it was an unbusiness-like way for the plaintiffs to keep their accounts to have the person who drew the checks examine the vouchers upon their return to the bank, and determine without the examination of any other person whether the account was correct or not; and that this practice afforded facilities to the book-keeper to perpetrate such frauds as were perpetrated in the case at bar. The plaintiffs are responsible for the actions of their employes within the scope of their duties, and when they committed the examination of these accounts to this employe they became responsible for his frauds as far as they were perpetrated in the course of his employment, and within the scope thereof.  The knowledge of Fischel was the knowledge of the plaintiffs in respect to the existence of these fraudulent checks, and the same rule is to be applied as though the checks had been returned to the plaintiffs personally, and they had negligently omitted to examine the account.

As to the check of the 19th of August, 1885, for $1,486.55, a different rule prevails.  In that case, upon the return of the check from the bank, it was rejected and the account disputed.  It then became necessary for the bank to show that they had rightfully paid out the money, and it could only do so by proving the indorsement upon the back of the check.  The whole foundation of the plaintiffs in respect to the 11 checks, as to which the burden of proof rested upon them, is based upon the testimony of Fischel.  It is true that the learned counsel for the plaintiffs claim that the case is made out for the plaintiffs outside of the testimony of Fischel; but a very brief examination of the facts of the case shows that his testimony forms the keystone of the whole evidence upon which the plaintiffs claim to recover as to these 11 checks.  It is urged that the confession and other testimony of Fischel were merely corroborative evidence of the forgery which was complete without that testimony. But we have failed to find, and the counsel has failed to point out, the testimony which establishes the facts, independent of that of Fischel, necessary to the plaintiffs' recovery as to 11 of the checks in suit.  It was necessary for the plaintiff to establish what the checks were, to whom they were payable, and that they were not indorsed by the payees.  Where there is any evidence establishing these facts, outside of Fischel's testimony, we have been unable to ascertain.  The plaintiffs claim the right to recover because they have called the payees of the checks in question, or the persons who were supposed to be the payees, and they have sworn that they did not receive or indorse any such checks as the 11 checks are supposed to be.  That these checks were

drawn to any one of these parties depends upon the testimony of Fischel. He only knew to whose order they were drawn. If the stub of the bank-book is referred to, that is the testimony of Fischel. Those entries were made in his handwriting, and it is only because of the evidence of Fischel as to the nature and character of these checks that the plaintiffs could single out the witnesses they have called to rebut the presumption that the check had been properly drawn and indorsed. The evidence shows that the distinct persons and firms, who were creditors of the plaintiffs, numbered 163; and none of these were called except the members of the various firms specified by Fischel as those whose names he employed in drawing the checks which he used for his own purposes. It is evident from the verdict of the jury that they have utterly disbelieved the testimony of Fischel, and they were justified in disregarding it if they did not believe it worthy of credit. It is conceded that he was a forger and a defaulter, and his testimony was uncertain and contradictory in many important particulars, and the jury may very well have hesitated to place any credence whatever upon anything that he might testify to. Outside of his testimony there does not seem to have been any evidence which was at all conclusive that the indorsements upon the checks not produced were forgeries. The proof that there was no credit in the plaintiffs' books for the amount of the checks, that the receipt-book of the plaintiffs contained a voucher for every check sent out to a merchandise creditor, and contains none for these checks, and that checks corresponding in amount to those went through Fischel's account, in the Murray Hill Bank, does not conclusively prove that the indorsements upon the checks in question were forged. The most that can be claimed for such proof is that an inference of that fact may be drawn therefrom, and it is peculiarly for the jury to determine whether such evidence established that inference or not.

The check of August 19, 1885, however, stands upon an entirely different footing. If the burden of proof was upon the plaintiff to establish that that check had been forged, or that the payee's name had been altered after signature, there undoubtedly is not sufficient evidence in the record to justify a recovery. The evidence of the experts as to handwriting was considered by the jury, and if it was entitled to any consideration, rejected by them, as they had a right to do. There is no rule of law that requires jurors to surrender their judgment implicitly to, or to give the controlling influence to the opinions of, scientific witnesses. The jury have a right to consider the testimony to determine what credence shall be given to it and to weigh it according to their own judgment, and such evidence can never be wholly conclusive, save in cases where none but experts are capable of determining the question. Therefore, applying this rule to the case at bar, even if the testimony of the experts tended to show that the check produced had been altered after signature, and the indorsement forged, the jury had a right to reject the evidence, even though there may have been none to contradict it. But the evidence of the experts falls far short of showing that the check was altered after signature, or that the indorsement was forged. The most that it tends to establish is that the letter "T" changed to an "F" in the payee's name, after the name had been written, and in a different ink, and that the indorsement, "F. D. DAVIS," resembled Fischel's handwriting. Every particle of this evidence might be entirely true, and the signature have been made, after the alteration and the indorsement, that of the payee. There is no proof that the "T" was changed to an "F" after signature. The sole proof is that the "T" was changed to an "F" the "T" was written, which, in view of the character of the writing, was a necessary fact. Neither is the fact that different ink was used in the change of the "T" to the "F" of any significance. It appears that the date of the check was in a different ink from the body of the check, and it is conceded that checks of blank date were not signed by the plaintiffs. The mere fact that the indorsement, "F. D. DAVIS," upon the

back of the check, assuming it to have been signed payable to the order of F. D. Davis, resembles that of Fischel, hardly raises the presumption of forgery. It would seem that some more well-defined proof was required in order to justify the jury in finding that that indorsement had been forged. We are discussing this question, of course, entirely independent of the evidence of Fischel, which evidence has been rejected by the jury as to the other 11 checks, and it could not be received as to this check unless there were some better support for the evidence in respect to the check produced than in respect to those which were not produced. The burden of proof, however, in respect to the check produced, was not upon the plaintiffs to show that the indorsement upon the check in question was a forgery. That voucher was rejected upon its return from the bank, and the bank was required to sustain the payment. To do this it was necessary for them to show that the payee named in the check did indorse the same. This they have utterly failed to do, and therefore the plaintiffs had made out a case in respect to this check, being entirely differently situated in relation thereto from what they were in relation to the other 11 checks which were not produced, and as to which the burden of proof was upon them. It would therefore appear that in this condition of the proof, with Fischel's testimony eliminated, as it was, or with Fischel's testimony received, the plaintiffs would be entitled to recover for the amount of this check, the defendants not having discharged their obligations in respect thereto.

It is claimed that because of some suit brought against some other parties the defendant thereby became discharged from its obligation to pay this money upon the ground that the plaintiffs had elected their remedies, and, having elected to pursue the fraudulent receiptors of the money, they cannot hold their debtor, the bank. We think, however, that this position requires an entire misapplication of the doctrine as to the election of remedies. The relation between the bank and the plaintiffs was simply that of debtor and creditor. The plaintiffs had an absolute right to claim the payment of their debt, and until the bank was released by the action of the plaintiff from that claim, no matter how many other persons the plaintiffs might pursue, for the purpose of collecting that debt, the defendant is not discharged. It is entirely different from the case of two remedies being within the reach of the creditor where his selection of one precludes the use of the other. There was but one debtor, the bank, and the bank could not discharge its duty by claiming that the plaintiffs had pursued somebody else for the same debt. The cases cited are cases relating to the election of remedies. There is no such doctrine in reference to the election of debtors. It would appear, therefore, that the plaintiffs were entitled to recover upon the proof as it stood in the case at bar upon the check produced, and that the court was justified in granting the motion to set aside the verdict and for a new trial. The order appealed from should therefore be affirmed, with costs.

BARTLETT and MACOMBER, JJ., concurring.