[Civ. No. 19697.   Second Dist., Div. Three.   Dec. 14, 1953.]

HENSLEY-JOHNSON MOTORS (a Corporation), Respondent, v. CITIZENS NATIONAL BANK OF BELL-FLOWER (a National Banking Association), Appellant.

Everett H. Smith for Appellant.

Getz, Aikens & Manning and DeWitt Morgan Manning for Respondent.

VALLÉE, J.—Appeal by defendant from an adverse judgment in an action to recover sums deposited with defendant bank and paid out in the cashing of checks on forged endorsements.

Plaintiff, an automobile dealer, maintained two accounts with defendant bank and one with a Bellflower bank. In the ordinary course of business, checks received were endorsed with a stamp bearing plaintiff's name for deposit only. No signature was required for deposit. The signature cards which plaintiff furnished defendant, pursuant to resolution of its board of directors, authorized two signatures only—Ben F. Hensley and Leland C. Johnson. In 1947, plaintiff employed one Marchand as a bookkeeper. On June 6, 1950, Marchand presented to defendant a check for $766.23, payable to plaintiff. It was endorsed with a stamp of plaintiff's name and thereunder the following: "By A. H. Marchand, Bus. Mgr." On August 7, 1950, Marchand presented to defendant a check for $968.53, payable to plaintiff. It bore the stamp endorsement and thereunder, "A. H. Marchand." On October 3, 1950, Marchand presented to defendant a check for $1,302.29, payable to plaintiff. It was endorsed in longhand with plaintiff's name, by "A. H. Marchand." Defendant paid Marchand the amounts of the checks and charged plaintiff's account therefor. In due course, the checks cleared and defendant received the full amount of them. Of the $1,302.29 which he received on the third check, Marchand deposited $985.58 in plaintiff's account in the Bellflower bank and retained $316.71. The total amount retained by Marchand from the three checks was $2,051.47.

Marchand's thefts from plaintiff totaled $9,980.10 and he was indebted to plaintiff on an open book account in the sum $517.28. Of the total thefts, $7,316.22 was taken prior to August 2, 1950, and $2,663.88 after August 2d. Plaintiff had a fidelity bond issued by Fireman's Fund Indemnity Company in the amount of $2,500 until August 2, 1950, which covered its employees, including Marchand. On that date,

the bond was increased to $10,000. Fireman's Fund paid plaintiff $2,500 on account of Marchand's defalcations which occurred prior to August 2, 1950. At the time of this payment, it was agreed between plaintiff and Fireman's Fund that the $2,500 should be, and it was, applied on defalcations which occurred prior to August 2d other than the $766.23 check cashed on June 6th. Fireman's Fund paid plaintiff $1,378.64 on account of losses occurring after August 2d. It did not pay plaintiff $1,285.24—the combined net amount of the losses suffered after August 2d on the two checks endorsed by Marchand ($968.53 plus $316.71 equals $1,285.24) —with the understanding that that sum would be paid by it to plaintiff in the event the latter failed to recover it in an action against defendant.

Marchand died prior to the trial of this action. Plaintiff filed a claim against his estate for $12,901.68. The claim was rejected. Plaintiff then brought an action on the claim against the administrator of Marchand's estate. The action was settled by the administrator's paying $2,000 in consideration of a covenant not to sue.

Plaintiff demanded payment of defendant of the amounts of the checks of June 6th, August 7th, and October 3d. Payment was refused. Plaintiff then brought this action for the total of the three checks, $3,037.05.

The court found: 1. Marchand was without authority from plaintiff to endorse the checks other than for deposit. 2. Plaintiff had not been paid on account of the checks except the $985.58 deposited by Marchand in the Bellflower bank. Judgment was for plaintiff for $2,051.47 (check of June 6th, $766.23, plus check of August 7th, $968.53, plus $316.71 of October 3d check). Defendant appeals.

Defendant's specifications of error are: 1. The agency of Marchand was established by the acts of the parties; by reason of such agency defendant cannot be held liable for their conversion. 2. Plaintiff's loss was covered by the fidelity bond; and since payment was made by the surety, plaintiff has no right of recovery against defendant.

The first assignment of error is in reality a claim that the finding that Marchand was without authority to endorse the checks other than for deposit is not supported by the evidence. The claim cannot be sustained. The evidence was in conflict on the question of Marchand's authority. Mr. Hensley, president of plaintiff, testified that neither defendant nor any of its officers had ever been advised orally or in writ-

ing that Marchand might endorse checks payable to plaintiff and cash them, and that he did not have such authority. The signature cards did not authorize Marchand to do so. Defendant did not have any other written authority from plaintiff respecting the cashing of checks. This evidence is sufficient to support the finding. We may not review the question which was purely factual.

Defendant argues that plaintiff was negligent in not discovering the defalcations sooner. The only evidence as to the date of discovery was that it was in the fall of 1950. The burden was on defendant to establish that plaintiff was negligent. Negligence of the customer of a bank must contribute to or induce the acceptance by the bank of a forged endorsement. Mere negligence in the conduct of the customer's business is not a sufficient defense where it does not contribute to the payment of the check, since the obligation of seeing whether there is a forged endorsement rests primarily on the bank. (8 Cal.Jur.2d 65, § 99.) There was no evidence that the failure of plaintiff to discover the defalcations sooner contributed to or induced the acceptance of the checks by defendant.

The general rule is that a bank which has paid out money on a forged endorsement is liable to the payee of the check for the amount which he should have received thereon. (*Union Tool Co.* v. *Farmers etc. Nat. Bank,* 192 Cal. 40, 46 [218 P. 424, 28 A.L.R. 1417] ; *Los Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601, 604 [182 P. 293, 5 A.L.R. 1193]; *Frankini* v. *Bank of America,* 31 Cal.App.2d 666, 672 [88 P.2d 790].)

We consider first plaintiff's right to recover the amount of the check of June 6th for $766.23. Defendant argues that plaintiff was paid by the receipt of $2,500 from Fireman's Fund and the receipt of $2,000 from the administrator of Marchand's estate. Plaintiff says that since its losses prior to August 2d were $7,316.22, its receipt of $2,500 from Fireman's Fund and $2,000 from Marchand's estate did not fully reimburse it for its losses and it has a legal right to recover from defendant on its liability.

Plaintiff's right to recover the amount of the June 6th check is settled by *Sommer* v. *Bank of Italy,* 109 Cal.App. 370 [293 P. 98]. *Sommer* v. *Bank of Italy* was an action to recover sums deposited with the defendant bank and paid out on checks forged by an employee of the plaintiffs. The

forged checks totaled $1,550. The bank reimbursed the plaintiffs in the sum of $365, but refused further reimbursement. The employee was arrested, placed on probation, reemployed by the plaintiff, and made partial restitution to the extent of $443.50. The action was against the defendant bank for the unpaid balance. The court said (p. 376) : ''From the defenses set forth in the pleadings and the grounds stated upon the motion for nonsuit in the trial court it appeared that defendant placed reliance upon an alleged ratification of the forgeries by plaintiffs. This ratification is claimed upon the evidence which showed that plaintiffs had re-employed the employee after he was placed on probation and had accepted partial restitution from him through the probation office. Our attention has not been directed to any authority to sustain the proposition that such re-employment and acceptance of partial restitution would constitute a ratification precluding a claim by the depositor against the bank for the unpaid balance and we find no reason for so holding.''

Since plaintiff has not been fully reimbursed for the losses which occurred prior to August 2d, defendant is not relieved of its liability to reimburse plaintiff for the check of June 6th. (See *Houseman-Spitzley Corp.* v. *American State Bank,* 205 Mich. 268 [171 N.W. 543] ; *City of New York* v. *Bronx Trust Co.,* 261 N.Y. 64 [184 N.E. 495] ; *International Aircraft Trading Co.* v. *Manufacturers Trust Co.,* 297 N.Y. 285 [79 N.E.2d 249] ; *August* v. *Fourth Nat. Bank,* 1 N.Y.S. 139, 143; *Central Nat. Bank* v. *First & Merchants Nat. Bank,* 171 Va. 289 [198 S.E. 883].)

As to the losses after August 2d, when the amount of the bond was $10,000, defendant argues that since plaintiff received $1,378.64 from Fireman's Fund on account of such losses and an agreement by the latter to reimburse it for the balance of the loss after that date should plaintiff not recover such balance in an action against defendant, it was reimbursed in full and plaintiff may not recover the loss after August 2d from it. Plaintiff argues it has a legal right to collect the balance of the loss after August 2d, irrespective of its agreement with Fireman's Fund.

Plaintiff's right to recover the amount of the checks cashed after August 2, 1950, depends on the legal effect of its acceptance of $1,378.64 from Fireman's Fund to apply on losses which occurred after that date and the agreement of the latter to pay plaintiff $1,285.24, the total of the two checks cashed after August 2d less the amount deposited by Marchand

in the Bellflower bank, in the event plaintiff failed to recover that sum in an action against defendant.

There are two independent contracts involved: one, between plaintiff and defendant by which the latter agreed it would not pay the checks of plaintiff on forged endorsements; the other, between plaintiff and Fireman's Fund by which the latter agreed to reimburse plaintiff for its losses. Both remedies were open to plaintiff with the limitation that there could be but one satisfaction.

*Meyers* v. *Bank of America,* 11 Cal.2d 92 [77 P.2d 1084], holds that where an employer has sustained loss as a result of his employee's forging endorsements on checks, and the employer's surety has reimbursed him in full for the loss, the surety cannot recover from the bank since the surety has no equities superior to those of the bank. (See 27 Cal.L.Rev. 88.)

The facts in *American etc. Ins. Co.* v. *Capital Nat. Bank,* 75 Cal.App.2d 787 [171 P.2d 449], were similar to those in the case at bar. The surety had reimbursed the employer in full for its loss. The court stated (p. 794): "The principal wrongdoer in this case was the forger, Ernest C. Dietz. He was the agent and employee of plaintiff, who, by implication at least, vouched for his honesty to the bank. Dietz is not a party to this suit. The liability of the surety company, which paid plaintiff the losses sustained, was contractual and absolute, independent of the separate liability of the wrongdoer Dietz for his forgeries and misappropriations. . . . The bank was not a party to the fraudulent transactions of Dietz, but it was an innocent third party who paid the drafts in reliance upon the certificate of plaintiff's agent that the signatures of the payees were genuine. The bank paid the drafts to Dietz in the regular course of banking business without knowledge of the forgeries. The equities of the transactions are all favorable to the bank. Neither the surety company nor the bank was a party to the forgeries. But the bank was misled by the certificate of the genuineness of the payees' signatures by plaintiff's agent and employee." It was held that since the employer had been reimbursed in full by the surety it could not recover from the bank.

A number of cases hold that a bank depositor who claims that a bank has paid out his money to a person not entitled to receive it has an election to sue either the bank or the person who received the money but that, if he chooses to sue the latter, he thereby precludes himself from suing the bank. (See anno.

144 A.L.R. 1440.) *No Dust O Co.* v. *Home Trust Co.,* (Mo. App.) 46 S.W.2d 203, was an action by a depositor against a bank for the aggregate of checks wrongfully cashed by its employee. The depositor-employer accepted a note and mortgage from a relative of the employee in full payment of his shortages. The court held that by accepting the note and mortgage the employer ratified the employee's "act in cashing the checks in question at the defendant bank," citing *Cushman* v. *Loker,* 2 Mass. 106; *Lafitte, Dufiilho & Co.* v. *Godchaux,* 35 La.Ann. 1161; *Ogden* v. *Marchand,* 29 La.Ann. 61; *Glor* v. *Kelly,* 49 App.Div. 617 [63 N.Y.S. 339]; *McCoy* v. *Simon,* 64 Wash. 574 [117 P. 400]; *Crute* v. *Burch,* 154 Mo.App. 480, 482 [135 S.W. 1004]; *Lokey* v. *Rudy-Patrick Seed Co.,* (Mo. App.) 285 S.W. 1028.

In *Liberty Mut. Ins. Co.* v. *First Nat. Bank in Dallas,* (Tex. Civ.App.) 239 S.W.2d 738, an employee obtained payment of checks from the drawee bank on forged endorsements. The employer recovered the defalcations from the surety on the employee's fidelity bond. The employer and the surety executed a written instrument which declared that the payment for the defalcations was an advance and that the employer would prosecute a claim against the bank and pay over such money as it recovered to the surety. The court held (p. 740) : "To our way of thinking, the more reasonable thing to say under the facts of the present case is that appellant, the employer, after treating the money paid out on the checks as belonging to appellant, in order to get at the surety company, and after collecting from the surety company on the ground that it was the employer's money, and not that of the bank, which had been embezzled by the employee, may not now be allowed to reverse its position and claim that its money is still in the bank. It is inconsistent for appellant to take the position as between it and the fidelity surety that the money was obtained from the bank and embezzled by the employee, and to claim as between it and the bank that the money is still in appellant's account in the bank.

"Possibly in an effort to avoid the effect of an election of remedies, appellant and the fidelity insurer executed an instrument in writing, at the time the claim on the bond was paid, which declared that the sum involved was being advanced to appellant, and that appellant would prosecute a claim against the bank at the cost and expense of the fidelity insurer, and would pay over to the latter such money as it might recover from the bank.

"We are not able to see that the language of this writing changed either the form or the substance of what was done by way of making claim on the fidelity bond. It is undisputed that claim was made on the bond, and that the full amount of the defalcations was paid to appellant. Appellant elected as to the remedy it would pursue, and prosecuted the claim on the fidelity bond to a successful conclusion. To call this transaction a loan would be to ignore the realities of the situation. If, as we have held, the doctrine of election of remedies is applicable to the case, the result is that appellant waived its claim against the bank, and had no claim against the bank which it could thereafter prosecute on behalf of the fidelity insurer, or assign to it."

There is no difference in principle between the Liberty Mutual case and the case at bar insofar as the losses after August 2d are concerned. The effect of the agreement between plaintiff and Fireman's Fund is that plaintiff has been reimbursed in full by the surety for the losses sustained after August 2. Plaintiff, by accepting payment of $1,378.64 from Fireman's Fund, together with its agreement to reimburse it in full, treated the money paid out after August 2d as belonging to it (plaintiff). Having treated the money as its own and having secured the agreement from the surety, it will not now be allowed to reverse its position and say the money is still in the bank. When plaintiff accepted the agreement from the surety, it waived its claim against defendant.

We conclude that plaintiff is entitled to recover from defendant $766.23, the amount of the check of June 6, 1950, and that it is not entitled to recover the amounts of the checks of August 7 and October 3, 1950.

The judgment is modified by reducing the amount thereof from $2,051.47 to $766.23. As thus modified, it is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 10, 1954. Edmonds, J., and Carter, J., were of the opinion that the petition should be granted.