[Civ. No. 18536.   First Dist., Div. Two.   Sept. 22, 1959.]

WILLIAM J. TRANER, Appellant, v. CROCKER ANGLO NATIONAL BANK (a National Banking Association), Respondent.

Bohnert & McCarthy for Appellant.

Severson, Davis & Larson, Nathan R. Berke and George Brunn for Respondent.

O'DONNELL, J. pro tem.*—This is an appeal by plaintiff from a summary judgment entered in favor of defendant.

Plaintiff is president of Traner-Small Company, Inc., a corporation.  One May Scanlon, an employee of the corpora-

*Assigned by Chairman of Judicial Council.

tion, embezzled funds of the corporation. To conceal the embezzlement she forged plaintiff's signature on a check for $3,500, made payable to the corporation, and drawn on plaintiff's individual account with defendant. She deposited the check in the corporation's account with the Bank of America. Upon presentation, defendant honored the check and debited plaintiff's account accordingly. Upon discovery of the facts, plaintiff demanded that defendant credit his account with the amount of the check. Defendant refused.

At the times here involved there was in effect a fidelity bond executed by St. Paul-Mercury Indemnity Company, as surety, to the corporation, as obligee, indemnifying the corporation against losses arising from the defalcations of the latter's employees. Having been refused reimbursement by defendant, plaintiff thereupon sought recovery of his loss from St. Paul, claiming that he was protected from such loss by the fidelity bond. St. Paul refused payment, on the ground that the sole obligee under its bond was the corporation. However, St. Paul did advance to plaintiff the sum of $3,500, and plaintiff, in turn, executed a "Loan Receipt" to St. Paul, in words and figures as follows:

"LOAN RECEIPT

"Dated: August 2, 1957

"Received from ST. PAUL-MERCURY INDEMNITY COMPANY the sum of $3,500.00 as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, firm or corporation in connection with a forged check in the amount of $3,500.00, dated June 12, 1957, and drawn upon the Crocker-Anglo National Bank, which check was honored by said bank and credited to the account of Traner-Small Co., Inc., or from any insurance or bond effective in connection with said forged check, and as security for such repayment the undersigned hereby pledges to the said ST. PAUL-MERCURY INDEMNITY COMPANY all his, its, or their claims against said persons, firms or corporations and any recovery thereon and hereby agrees to deliver to ST. PAUL-MERCURY INDEMNITY COMPANY all evidence of such claims as it may have in connection with said forged check.

"The undersigned covenants that no settlement has been made by the undersigned with any person, firm or corporation against whom a claim may lie in connection with said forged check and no release has been given to anyone in con-

nection with the claim of the undersigned against the Crocker-Anglo National Bank in connection with said forged check and that no such settlement will be made nor release given without the written consent of St. Paul-Mercury Indemnity Company. The undersigned agrees to cooperate fully with St. Paul-Mercury Indemnity Company and, if necessary, to commence, enter into and prosecute suits against such person, firm or corporation who may be liable to the undersigned for claims resulting from said forged check in his, its or their own name and hereby appoints the managers and/or agents of St. Paul-Mercury Indemnity Company as agents of the undersigned to begin, prosecute, compromise, or withdraw in his, its or their name, but at the expense of St. Paul-Mercury Indemnity Company, any and all legal proceedings that St. Paul-Mercury Indemnity Company may deem necessary to enforce such claim or claims and to execute in the name of the undersigned any documents that may be necessary thereto.

"Any legal proceedings are to be under the exclusive direction of St. Paul-Mercury Indemnity Company.

/s/ Wm. J. Traner"

In support of its motion for summary judgment defendant filed only the affidavit of Nathan R. Berke, Esq., one of its attorneys of record. In his affidavit Mr. Berke makes reference to the deposition of plaintiff, in which plaintiff admitted having received the sum of $3,500 from St. Paul, and incorporates in his affidavit a copy of the "Loan Receipt." The affidavit concludes with the averment, made on information and belief, that St. Paul initiated and is maintaining the present action on behalf of plaintiff. The affidavit does not aver that St. Paul was obligated to pay the $3,500. Plaintiff filed counteraffidavits; one, his own, and the other, that of an agent of St. Paul. These affidavits were to the effect that plaintiff had not, prior to Mrs. Scanlon's forgery, entered into any contract with St. Paul, or any other surety company, for his protection against loss by reason of defalcation of any person, and that the $3,500 was advanced to plaintiff as a loan only.

Defendant contends that the payment of $3,500 by St. Paul to plaintiff was not made as a loan, but as reimbursement for plaintiff's loss, and that plaintiff is thereby precluded from recovery of this amount from defendant. Defendant relies on three cases, which cases we now proceed to discuss.

*Meyers* v. *Bank of America,* 11 Cal.2d 92 [77 P.2d 1084],

held that an indemnitor of fidelity who reimburses his indemnitee for a loss resulting from the negotiation of forged checks by an employee of the indemnitee has no right of recovery from the innocent bank which honored the forged checks. The rationale of the decision is that an indemnitor has a primary contract liability to reimburse his indemnitee for the latter's losses; that although a bank which pays out funds of a depositor on forged checks is liable therefor to the depositor, the depositor's indemnitor will not be subrogated to the rights of the depositor against the bank, because the doctrine of subrogation is a creature of equity, and the equities of the indemnitor are no greater than the equities of the bank which innocently paid out funds on a forged signature.

In *American Alliance Ins. Co.* v. *Capital Nat. Bank,* 75 Cal.App.2d 787 [171 P.2d 449], one of plaintiff's employees forged checks which were honored and charged against plaintiff's account by defendant bank. Thereafter plaintiff's indemnitor, a bonding company, reimbursed plaintiff for its losses and took from plaintiff a loan receipt agreement. The terms of the agreement were substantially the same as the terms of the agreement in the case at bar. The court held that the agreement was a mere sham, and that the money was in fact paid to plaintiff in discharge of its liability under its fidelity bond. The court therefore held: (1) That plaintiff had no right of recovery against defendant bank on its own account, for that would constitute double recovery; and (2) that plaintiff could not recover on behalf of the bonding company because, under the rule of Meyers, the bonding company had no enforceable right of subrogation against the bank.

*Hensley-Johnson Motors* v. *Citizens Nat. Bank,* 122 Cal. App.2d 22 [264 P.2d 973], presented a factual situation essentially similar to the American Insurance case and the court accordingly denied recovery from the bank.

The major premise of each of the three decisions just discussed was the indemnitor's absolute, contractual obligation to make good the losses of its indemnitee. The same premise is not present in the case at bar. Here, as we have seen, there is nothing in the affidavits that shows the existence of any obligation of St. Paul to reimburse plaintiff for his loss. "The affidavit or affidavits in support of the motion must contain facts sufficient to entitle . . . defendant to a judgment in the action, . . ." (Code Civ. Proc., § 437c.) So far as appears from the affidavits, the transactions between plaintiff and St. Paul amounted to nothing more than a loan.

The rules established in the cited cases are, therefore, inapplicable here. In the present state of the record, there is nothing to inhibit plaintiff's maintaining this action against the bank. (See *Heuer* v. *Truck Ins. Exch.*, 51 Cal.App.2d 497 [125 P.2d 90], where a loan made on terms similar to those in the instant case was recognized for what it was—a loan.)

The error into which defendant has fallen (and, apparently, the trial court too) is in interpreting the effect of the cited cases to be that, under no circumstances can a loan agreement, such as we have here, be given effect. It is clear beyond question that none of the cited cases so holds, or so intimates.

We conclude that the affidavits filed herein do not show the existence of an obligation of St. Paul to reimburse plaintiff for his loss; that there is, therefore, on this showing made no reason for refusing to recognize the transaction between St. Paul and plaintiff as constituting merely a loan and, consequently, no reason for denying plaintiff the right to pursue his remedies against defendant; and that the trial court erred in granting defendant's motion for summary judgment.

The judgment is reversed.

Dooling, Acting P. J., and Draper, J., concurred.