**McNEIL CONSTRUCTION COMPANY,**
a corporation, Plaintiff,

v.

**The LIVINGSTON STATE BANK, a corporation, Defendant.**

No. 758.

United States District Court
D. Montana,
Helena Division.

Dec. 4, 1957.

810

Brown, Sande, Symmes & Forbes, Billings, Mont., for plaintiff.

Luxan & Scribner, Helena, Mont., for defendant.

MURRAY, Chief Judge.

Plaintiff depositor sues to recover the sum of $4,148.16 from the defendant bank which paid said sum out of the plaintiff's account upon forged checks.

Defendant filed a motion to dismiss upon the ground that the said action was filed in the wrong division, a motion to dismiss the action upon the ground the complaint failed to state a claim upon which relief could be granted, a motion to transfer said action to the Helena Division of said court in the event the motion to dismiss on the ground the action was filed in the wrong division was denied, and a motion to require the joinder of Seaboard Surety Company as a party plaintiff in said cause. Thereafter the plaintiff filed a motion for summary judgment. Defendant's motions to dismiss were denied, its motion to transfer the cause to the Helena Division of the court was granted; and defendant's motion to require the joinder of Seaboard Surety Company as a party plaintiff and plaintiff's motion for summary judgment are now before the Court for decision. Both parties have filed affidavits in support of their respective motions and in opposition to the motion of the other party.

From the complaint and affidavits it appears that the plaintiff McNeil Construction Company was engaged in a project in Yellowstone National Park and had in its employ as a night watchman one Lex Lamb, and that the said Lamb stole from the plaintiff 400 blank payroll checks and thereafter said Lamb forged the plaintiff's name to 29 of the checks, each of which he made payable to himself in the amount of $143.04, and each of which checks purported to cover the pay period ending either 9–26–56 or 9–25–56. Thereafter said Lamb cashed said forged checks at various places and they eventually reached the defendant bank and were paid by the defendant and charged against the account of plaintiff.

It further appears that the plaintiff McNeil Construction Company was insured against such loss by an indemnity bond issued by Seaboard Surety Company, and presented a "Statement of Claim" to said surety company under said bond for $4,148.16, the amount of the forged checks, and received said amount from said surety company and executed an instrument entitled "Loan Receipt" which contained the following statement:

"Received from the Seaboard Surety Company (hereinafter referred to as 'Company') the sum of Four Thousand One Hundred Forty Eight Dollars and Sixteen Cents (4,148.16) Dollars as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage described in the attached 'Statement of Claim' incorporated herein, by

reference or from any insurance, and as security for such repayment the undersigned hereby pledges to the said Company all of his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers."

The defendant contends that the money received by plaintiff is in fact "payment" under the provisions of its indemnity bond rather than a "loan" as it purports to be under the above loan receipt, and that therefore Seaboard Surety Company having paid the loss suffered by plaintiff is the real party in interest and should be brought into the suit as a party plaintiff. Plaintiff, on the other hand, maintains that the money received by the plaintiff from the surety company is in fact a loan and that the plaintiff therefore has not been paid for the loss occasioned by the forgeries, is the proper party plaintiff, and is entitled to summary judgment against the bank on the bank's contract not to pay out money from the account of plaintiff on any except a genuine signature.

The first question to be decided is whether the money which was received by the plaintiff from the surety company constitutes a payment by the surety company of its obligation under the indemnity bond, or is merely a loan.

In the case of Luckenbach v. W. J. McCahan Sugar Refining Company, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, the Supreme Court of the United States considered a somewhat similar transaction and upheld the validity of the so-called loan agreement. Since the decision in that case, loan receipt transactions have been considered by many courts and there is a definite conflict in the authorities as to whether as a matter of law such transactions constitute a loan or a payment of the surety's obligation under its bond.

Defendant contends that since the money was received by McNeil Construction Company and the loan receipt agreement was executed in California, California law should control, and that there-for under the case of American Alliance Insurance Company v. Capital National Bank, 75 Cal.App.2d 787, 171 P.2d 449, the money was received by McNeil Construction Company from Seaboard Surety Company as a payment rather than as a loan. The so-called loan receipt transaction has not been considered by the Supreme Court of Montana and the plaintiff insists that because the transaction, which gave rise to the loan receipt agreement, occurred in the State of Montana, Montana law would govern, and this being a diversity case that this Court should decide that if the question were presented to the Montana Supreme Court, it would uphold the loan receipt transaction as a loan.

In the view that the Court takes, it is unimportant whether California law or Montana law applies because the Court believes if the question were presented to the Montana Supreme Court it would follow the same reasoning that the California court adopted, and hold the transaction constituted "payment" rather than a "loan".

As previously noted, there is a conflict of authority on the question of whether or not moneys paid under loan receipt agreements constitute payments of the surety's obligation or merely a loan. Perhaps the majority of the cases uphold such payments as a loan, but they do so, however, in reliance on the Luckenbach v. W. J. McCahan Sugar Refining Company case, supra. The Luckenbach case is clearly distinguishable from the instant case. In the Luckenbach case the insurance company's liability was contingent upon the non-liability of the carrier, whereas Seaboard Surety Company's liability in the instant case is absolute under its bond. In other words, in the Luckenbach case, the insurance company was not obligated to pay until it was first established that the carrier was not liable for the damages. The insurance company advanced the amount of the loss as a loan in consideration of the owner of the cargo turning over to it the direction and control of the owner's suit to establish the carrier's liability.

The Court upheld the arrangement as a proper one to protect the insurance company's interest in the suit to establish the carrier's liability and to insure prompt payment to the insured of the loss.

In this case, however, a different situation prevails. As the Court said in the case of Yezek v. Delaware L. & W. Ry. Co., 176 Misc. 553, 28 N.Y.S.2d 35, which is quoted with approval in American Alliance Insurance Company v. Capital National Bank, supra [75 Cal.App.2d 787, 171 P.2d 454]:

> "The insurer's liability to the insured is absolute when the loss occurs. No shipper or other third party is involved. The insured is entitled to prompt payment without resort to a loan. The transaction is held to be a payment. * * * It was 'payment without regard to its form'. The so-called loan was a fiction, a subterfuge unnecessary either to protect the insurer or to secure prompt payment to the insured."

What the New York Court said in the quotation above applies equally in the case at bar.

The Luckenbach case also held that whether such a transaction constitutes a payment or a loan is a matter of intention of the parties. In this case, the only evidence of the parties' intention to engage in a loan transaction is the loan receipt. On the other hand, the evidence is that the money was paid by Seaboard to McNeil in the exact amount of McNeil's loss and was paid in response to a claim filed by McNeil under the surety bond, the terms of which required Seaboard to pay McNeil the amount of the loss rather than make McNeil a loan. No interest was charged and the so-called loan was repayable only in the event and to the extent of any net recovery which McNeil might make against third parties. Certainly McNeil does not consider itself a debtor to Seaboard as a result of the so-called loan, nor would Seaboard, in a suit by McNeil under the bond, hesitate to claim the so-called loan as a discharge of its obligation under the bond. Viewing the so-called loan transaction in the light of all of the evidence from which the true intention of the parties can be gleaned, the Court feels that the Montana Supreme Court would have little difficulty in holding that the money paid McNeil by Seaboard constituted "payment" of its obligation under the surety bond, and not a "loan", and this Court so holds.

Having been made whole by the payment of its loss by the surety company, under the provisions of Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the case of United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, McNeil Construction Company is not the proper plaintiff in this action, not being the real party in interest. It is equally clear under the doctrine of United States v. Aetna Cas. & Sur. Co., supra, that Seaboard Surety Company, having paid the loss is the real party in interest, *if in the circumstances of the case, it is entitled to be subrogated to McNeil's claim against the bank.*

The case of Meyers v. Bank of America Nat. Trust & Savings Ass'n, 11 Cal.2d 92, 77 P.2d 1084, 1087, contains a thorough discussion of the problem of when a surety, who had paid a loss under a fidelity bond, is entitled to the benefit of subrogation, and an exhaustive analysis of the cases dealing with that subject. That case points out that a surety's right to recover by way of subrogation from a third person does not stand on the same footing as its right to recover from its principal; as to the latter, the right is absolute, as to the former it is conditional. It further points out that the doctrine of subrogation has with almost unanimity been held not to apply in favor of a surety on a fidelity bond, except only as against persons who participated in the wrongful act of the wrongdoer. The ultimate holding in Meyers v. Bank of America Nat. Trust & Savings Ass'n is that in a case such as the one at bar, the surety who has paid the loss has no right by way of subrogation to proceed against

the bank unless there are facts from which it appears that in equity and good conscience the bank rather than the surety should stand the loss. This holding is supported by the great weight of authority, and what is more important here, this being a diversity case, it is the law in Montana as announced in American Bonding Co. v. State Savings Bank, 47 Mont. 332, 133 P. 367, 46 L.R.A.,N.S., 557.

■ ■ Therefore, Seaboard Surety Company's right to maintain an action against the defendant bank under the doctrine of subrogation depends upon the existence of equities in its favor outweighing those in favor of the bank. The possibility that such equities may exist is suggested by evidence before the Court in the affidavits which might tend to show negligence on the bank's part in cashing and charging to McNeil's account 29 purported payroll checks payable to the same individual for the same payroll period. The Court is not now concerned with the questions of whether the bank's action in this respect amounted to negligence, and if so, whether such negligence would constitute a sufficient equity in favor of Seaboard to entitle it to maintain an action against the bank under the doctrine of subrogation, however, because the complaint in this case contains no allegations of such negligence or of any other equities that might exist in Seaboard's favor. It is the action commenced by the complaint presently on file with which the Court is concerned, and from what has been said, it is apparent that Seaboard Surety Company is not the proper party plaintiff to that action, or otherwise stated, that the present complaint does not contain sufficient allegations to state a claim upon which Seaboard can recover. While Rules 19 and 21 of the Federal Rules of Civil Procedure authorize the Court to require the joinder of an indispensable party plaintiff in an action pending before it, they do not authorize the Court to require the joinder of a party in an action where the complaint does not state a claim upon which such party can pos-

sibly recover, and therefore defendant's motion to require the joinder of Seaboard Surety Company as a party plaintiff is denied.

From what has been said above, it is clear that McNeil Construction Company's motion for summary judgment must also be denied. As a matter of fact, summary judgment for the defendant should be ordered, because the plaintiff is not the proper party plaintiff to the claim stated in the complaint and cannot recover thereon in its own behalf. It has been suggested, however, that McNeil may still be entitled to maintain this action in its own name as a "trustee of an express trust" under the authority of Dixey v. Federal Compress & Warehouse Co., 8 Cir., 132 F.2d 275, by virtue of the following provisions found in the so-called loan receipt:

"and the undersigned (McNeil Construction Co.) covenants and agrees to cooperate fully with the said Company to permit it, at its own expense, to promptly present claim and, if necessary, to likewise permit it at its own expense to commence, enter into and prosecute suit in the undersigned name against each person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name."

Assuming, without deciding, that that is so, the present complaint is still insufficient. If McNeil is bringing the action as a trustee of an express trust under the loan receipt, it is Seaboard's Surety Company's action that it is bringing, and as pointed out above under the Meyers v. Bank of America Nat. Trust & Savings Ass'n, supra, and American Bonding Co. v. State Savings Bank, supra, cases, a necessary part of Seaboard's action, if any, is allegations and proof of equities in favor of Seaboard outweighing those in favor of the defendant bank, and the complaint is devoid of such allegations.

Therefore, because from everything that is before the Court it appears that there may be equities in favor of Seaboard which would entitle it to recover, and because McNeil has suggested the possibility that it should be permitted to make the recovery on behalf of Seaboard as a trustee of an express trust, and in the interests of justice, McNeil Construction Company is granted 20 days within which to file an amended complaint, otherwise summary judgment will be ordered for defendant.