McNEIL CONSTRUCTION COMPANY, a Corporation, Appellant,

v.

LIVINGSTON STATE BANK, a Corporation, Appellee.

No. 16050.

United States Court of Appeals Ninth Circuit.

April 3, 1959.

Brown, Sande, Symmes & Forbes, Weymouth D. Symmes, Billings, Mont., for appellant.

Luxan & Scribner, A. W. Scribner, Helena, Mont., for appellee.

Before POPE, MATHEWS and ORR, Circuit Judges.

MATHEWS, Circuit Judge.

On May 1, 1957, in the United States District Court for the District of Montana, Billings Division,[1] appellant, McNeil Construction Company, a California corporation, brought an action against appellee, The Livingston State Bank, a Montana corporation having its principal office in the Helena Division of the District of Montana. The complaint prayed judgment against appellee for $4,148.16, with interest and costs.

Appellee did not answer the complaint, but, on May 28, 1957, moved to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted; moved to dismiss the action on the ground that it was brought in the wrong division; moved to transfer the action from the Billings Division to the Helena Division if the action was not dismissed; and moved to make Seaboard Surety Company, a New York Corporation, hereafter called Seaboard, a party to the action if the action was not dismissed. On August 19, 1957, appellant moved for a summary judgment in its favor.

At Billings the District Court (Judge Jameson presiding) filed an opinion[2] and, on October 3, 1957, entered an order denying the motions to dismiss the action and granting the motion to transfer the action to the Helena Division. At Helena the District Court (Judge Murray presiding) filed an opinion[3] and, on December 6, 1957, entered an order denying the motion to make Seaboard a party to the action, denying the motion for a summary judgment and granting appellant 20 days within which to file an amended complaint. Appellant did, on December 9, 1957, file an amended complaint praying judgment against appellee for $4,148.16, with interest and costs.

Appellee did not answer the amended complaint, but, on December 19, 1957, moved to dismiss the action on the ground that the amended complaint failed to state a claim upon which relief could be granted. On April 11, 1958, the District Court (Judge Murray presiding) entered an order granting that

1. The District of Montana was divided into divisions—the Billings Division, the Helena Division and others—not by any Act of Congress, but by a rule of the District Court.

2. McNeil Construction Co. v. Livingston State Bank, D.C.Mont., 155 F.Supp. 658.

3. McNeil Construction Co. v. Livingston State Bank, D.C.Mont., 160 F.Supp. 809.

motion and dismissing the action. This appeal is from that order.

The question we have to decide is whether the amended complaint stated a claim upon which relief could be granted.

■ The amended complaint alleged, in substance, that appellant was a California corporation; that appellee was a Montana corporation; that the matter in controversy exceeded $3,000, exclusive of interest and costs; that appellee was engaged in the banking business at Livingston, Montana; that individuals and corporations were authorized by appellee to make deposits and maintain checking account with appellee; that appellant maintained such an account and deposited $4,148.16 with appellee;[4] that the $4,148.16 was due and owing to appellant by appellee; and that appellee refused to pay the $4,148.16 to appellant. In and by these allegations, the amended complaint stated a claim upon which relief could be granted.

■ The amended complaint also alleged, in substance, that between September 13, 1956, and September 28, 1956, Lex Lamb (also known as Lexington Lamb) was employed by appellant as a night watchman; that while so employed, Lamb stole 400 blank checks belonging to appellant and forged appellant's name on 29 of them; that the 29 forged checks, aggregating $4,148.16, were negligently paid by appellee;[5] that at all times mentioned in the amended complaint appellant maintained with Seaboard a blanket position bond, a copy of which was attached to and made part of the amended complaint as Exhibit A; that after appellee refused to pay appellant the $4,148.16 alleged to be due and owing to appellant by appellee, appellant applied to Seaboard for reimbursement thereof;[6] and that Seaboard thereupon paid appellant $4,148.16 under a loan receipt agreement,[7] a copy of which was attached to and made part of the amended complaint as Exhibit B. These allegations were unnecessary.[8] They should have been stricken from the amended complaint as redundant matter.[9] However, they did not prevent the amended complaint from stating a claim upon which relief could be granted.

The blanket position bond, of which Exhibit A was a copy, was an indemnity bond. Seaboard thereby agreed to indemnify appellant against any loss of money or other property belonging to appellant which appellant should sustain "through any fraudulent or dishonest act or acts committed by any one or more of the Employees as defined in Section 3,[10] acting alone or in collusion with

4. Thus it appeared from the amended complaint that the relation between appellant and appellee was that of creditor and debtor. See 9 C.J.S. Banks and Banking § 267 p. 546.

5. It did not appear from the amended complaint that the payment of the forged checks constituted payment of the $4,148.16 alleged to be due and owing to appellant by appellee.

6. It did not appear from the amended complaint that Seaboard was obligated to reimburse appellant for the $4,148.16 alleged to be due and owing to appellant by appellee.

7. It did not appear from the amended complaint that this constituted payment of the $4,148.16 alleged to be due and owing to appellant by appellee.

8. The obvious purpose of these allegations was to anticipate and avoid defenses—

something a complaint is not required to do. See 71 C.J.S. Pleading § 84, p. 198.

9. See Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

10. Meaning, obviously, section 3 of the bond. Section 3 was as follows: "The word Employee or Employees, as used in this bond, shall be deemed to mean, respectively, one or more of the natural persons (except directors or trustees of [appellant] who are not also officers or employees thereof in some other capacity) while in the regular service of [appellant] in the ordinary course of [appellant's] business during the term of this bond, and whom [appellant] compensates by salary, wages, and/or commissions and has the right to govern and direct in the performance of such service, and who are engaged in such service within any of the States of the United States, or within the District of Columbia, the

others, during the term of this bond as defined in Section 1,[11] or within thirty (30) days after leaving the service of [appellant]," with specified exceptions, and did not agree to indemnify appellant against anything else.

The loan receipt agreement, of which Exhibit B was a copy, was executed by appellant at Los Angeles, California, on April 10, 1957. It was as follows:

"Received from [Seaboard] the sum of [$4,148.16] as a loan,[12] without interest, repayable only in the event and to the extent of any net recovery [appellant] may make from any person, persons, corporation or corporations, or other parties,[13] causing or liable for the loss or damage described in the attached 'Statement of Claim'[14] incorporated herein, by reference or from any insurance, and as security for such repayment [appellant] hereby pledges to [Seaboard] all of [appellant's] claim or claims against such person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers.

"[Appellant] covenants that no settlement has been made by [appellant] with any person, persons, corporation or corporations, or other parties, against whom a claim may lie, and no release has been given to any one responsible for such loss and that no settlement will be made, nor release given without written consent of [Seaboard]; and [appellant] covenants and agrees to cooperate fully with [Seaboard] to permit it, at its own expense, to promptly present claim and, if necessary, to likewise permit it at its own expense to commence, enter into and prosecute suit in [appellant's] name against each person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in [appellant's] own name. In further consideration of said advance,[15] [appellant] guarantees that [appellant is] entitled to recover upon said claim for loss or damage, and hereby appoints the manager and/or agents of [Seaboard] and their successors severally, [appellant's] agents and attorneys-in-fact, with irrevocable power to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in [appellant's] own name, but at the expense of [Seaboard], any and all legal proceedings that [Seaboard] may deem necessary to enforce such claim or claims, and to execute in the name of [appellant] any documents that may be necessary to carry the same into effect

Hawaiian Islands, Alaska, Puerto Rico, the Virgin Islands, Canada, Newfoundland, or elsewhere for a limited period, but not to mean brokers, factors, commission merchants, consignees, contractors, or other agents or representatives of the same general character." It appeared from the amended complaint that Lamb was an employee of appellant from September 13, 1956, to September 28, 1956, but it did not appear that Lamb was an "employee" as defined in section 3. It did not appear from the amended complaint that appellee was at any time an employee of appellant, an "employee" as defined in section 3 or an employee of any kind.

11. As defined in section 1 of the bond, the term of the bond began on August 4, 1953, and ended on the effective date of the cancelation of the bond in its entirety. As indicated above, the amended complaint alleged that appellant maintained the bond at all times mentioned in the amended complaint. We take this to mean that the bond was not canceled, but was in effect at all such times.

12. It did not appear from the amended complaint that this was intended to, or did, constitute payment of the $4,148.16 alleged to be due and owing to appellant by appellee.

13. The "person, persons, corporation or corporations, or other parties" referred to in the loan receipt agreement were not named or identified. We cannot assume that appellee was one of them.

14. Actually, no "Statement of Claim" was attached to Exhibit B—which was a copy of the loan receipt agreement—or to the amended complaint, nor was any copy of a "Statement of Claim" so attached. The loan receipt agreement did not describe any loss or damage.

15. Meaning, obviously, the loan previously mentioned in the loan receipt agreement.

for the purpose of this agreement. Otherwise [Seaboard] shall have final authority over legal proceedings and no settlement or compromise decision or action shall be made without the express consent of [Seaboard] or its agents."

The amended complaint alleged that the action was brought by appellant "not only on its own behalf, but as trustee of an express trust under the provisions of Exhibit B," meaning, obviously, the provisions of the loan receipt agreement. It did not appear from the amended complaint that appellant was, in fact, the trustee of an express trust under the provisions of the loan receipt agreement or otherwise. Thus the amended complaint failed to state a claim upon which relief could be granted to appellant as such trustee. However, that failure did not prevent the amended complaint from stating a claim upon which relief could be granted to appellant for itself.

It did not appear from the amended complaint that the blanket position bond or the loan receipt agreement had anything to do with appellee or any indebtedness of appellee or any claim, suit, action or proceeding against appellee. Hence Exhibits A and B should have been stricken from the amended complaint as redundant matter.[16]

If, as appellee here asserts, the $4,148.-16 alleged to be due and owing to appellant by appellee was paid before the action was brought, that was an affirmative defense which should have been presented by answer.[17]

Order reversed and case remanded with directions to enter an order striking from the amended complaint the exhibits attached thereto, all allegations concerning Lex Lamb or the theft of blank checks or the forgery of appellant's name or the payment of forged checks, and all allegations concerning Seaboard Surety Company or the blanket position bond or the application for reimbursement or the loan receipt agreement or the payment thereunder; deny-

ing the motion of December 19, 1957, to dismiss the action; and granting appellee leave to answer the amended complaint as provided in Rule 12(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

---

16. See Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

17. See Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.