274 F.2d 890
 J. J. TYLER and Herman, King, d/b/a King Drilling Company;
Merchants Fire Assurance Corporation, a
corporation; Guaranty Mutual Insurance
Company; and Standard Accident
Insurance Company, Appellants,
v.
DOWELL, INC, a Delaware corporation, and Phillips Petroleum
Company, a corporation, Appellees.
 No. 6093.
 United States Court of Appeals Tenth Circuit.
 Jan. 14, 1960, Rehearing Denied Feb. 10, 1960.
 
 John D. Robb, of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for appellants.
 Carl H. Gilbert, Sante Fe, N.M., and Royal H. Brin, Jr., Dallas, Tex. (Gary W. Davis, Bartlesville, Okl., and Bryan G. Johnson, Albuquerque, N.M., were with them on brief), for appellees.
 Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal from a judgment of the District Court of New Mexico on a jury verdict in a tort action by appellants against appellee Dowell, Inc., for loss or damage to its oil well drilling equipment caused by fire.
 
 
 2
 The basis facts are these. Tyler and King, doing business as King Drilling Company, contracted with Phillips Petroleum Company to drill and complete an oil well in New Mexico for a stipulated amount per vertical foot, and another agreed amount for work performed on a daily basis when not actually engaged in drilling operations. After the well had been drilled to the producing formation and virtually completed, and while the contractor was standing by on a day basis, Phillips arranged with appellee, Dowell, to sand frack the producing formation to increase productivity. This operation involved the injection of a mixture or blend of crude oil and sand into the producing formation under high pressure by means of pressure pumps, followed by injections of rubberized nylon balls to seal off the fractured formation. The oil-sand mixture entered the well through a frack head which is secured to the top of the blow-out preventer at the well head. The frack head comprises a cylinder with two-inch nipples screwed into its sides and valves attached to the outside of the nipples. After the oil and sand are mixed in a blender, it passes through flow lines to pressure pumps from which it is conveyed under high pressure through other flow lines attached to the valves on the nipples. The mixture first passes through the valves, then through the nipples into the cylinder, thence into the well casing and to the bottom of the well hole where it is pressurized through perforations in the casing into the producing formation.
 
 
 3
 In our case, the fracking operation had been completed and the well hole was being washed under pressure with clean oil, when one of the pressure with clean head failed, causing oil to spray in a radius of approximately 100 feet in about a 45 degree arc, within which area was located the pressure pumps about 80 feet distant from the well head, and the nylon ball pumping truck approximately 60 feet. The spraying oil caught fire, causing the asserted loss. The contractor, King Drilling Co., sued Dowell, charging negligent conduct in the fracking operation. Dowell denied negligence and pleaded contributory negligence and assumption of risk, and by a third party action against Phillips, invoked an indemnity agreement, whereby Phillips agreed to 'secure Dowell against loss or damage not expressly accepted by Dowell.' Phillips thereupon counterclaimed against the contractor, pleading an assumption of risk and hold-harmless agreement with the contractor.
 
 
 4
 Before trial, Phillips and Dowell composed their differences and the trial court sustained Dowell's motion to make the contractor's insurance carrier a party plaintiff, apparently on the grounds that it had paid part of the loss and was therefore a necessary or real party in interest. The case went to the jury on the issues drawn between the contractor and its insurance carrier on the one hand, and Dowell and Phillips on the other. The contractor objected to making the insurance company party plaintiff on the grounds that it had not actually paid any of the loss, but rather had merely entered into a loan agreement with the contractor by which it had advanced the contractor a stipulated sum of money to be repaid from the proceeds of this litigation.
 
 
 5
 The question under both New Mexico and federal law is whether by this transaction with its insured, the insurance company became a real party in interest, i.e., whether it is the owner or part owner of the right sought to be enforced. Sellman v. Haddock, 62 N.M. 391, 310 P.2d 1045; American Fidelity and Casualty Co. v. All American Bus Lines, 10 Cir.,179 F.2d 7; Gas Service Co. v. Hunt, 10 Cir., 183 F.2d 417; Celanese Corp. of America v. John Clark Industries, 5 Cir., 214 F.2d 551. Courts have generally sanctioned agreements between the insured and insurer, whereby the insurer advances a sum of money to its insured, to be repaid from the proceeds of an action against a tort-feasor. Western Spring Service Co. v. Andrew, 10 Cir., 229 F.2d 413; Celanese Corp. of America v. John Clark Industries,supra; Export Leaf Tobacco Co. v. American Insurance Co., 4 Cir., 260 F.2d 839. And, there is authority for saying that the insurer does not thereby become the owner of the right of action so as to make it the real party in interest. Augusta Broadcasting Co. v. United States, 5 Cir., 170 F.2d 199; 3 Moore Federal Practice, 17.09, p. 1349.
 
 
 6
 The question is whether by the terms of the loan receipt in this case, the insurer actually became the subrogee of the insured, hence the real party in interest to the extent of the 'loan.' The insured agreed to promptly present the claim, and if necessary prosecute a suit against the parties whose negligence or other fault caused the loss 'with all due diligence in their own name.' And, the insurer was furthermore given complete control of the litigation 'with irrevocable power to collect any such claim or claims, and to begin, prosecute, compromise or withdraw * * * (in the name of the insured) any and all legal proceedings that the said company may deem necessary to enforce such claim or claims, and to execute in the name of the insured any documents that may be necessary to carry the same into effect for the purpose of this agreement.' The nature of the 'loan receipt' in Sellman v. Haddock, supra (62 N.M. 391, 310 P.2d 1047), was not disclosed. But, there was testimony to the effect that it gave the insurer authority to 'collect from who ever caused the damage if they could determine that.' The New Mexico court construed this authority as giving the insurer an interest in the litigation which made it a necessary, even indispensable, party to the action against the tort-feasor. Evidently the trial court was of the view that what was in form a loan was in fact a payment of the loss and a subrogation of the claim to the extent thereof. Involving as it does a mixed question of state and federal procedural law, we adopt the decision of the trial court thereon. See Cities Service Oil Co. v. Adair, 10 Cir., 273 F.2d 673.
 
 
 7
 Appellant also complains of Phillips' participation in the lawsuit, but again, we cannot say that Phillips did not have a litigable interest therein.
 
 
 8
 The contractor requested numerous instructions setting forth its theory of the factual and legal issues of negligence, all of which the trial court declined to give. At the conclusion of the court's instructions, the contractor renewed its request and objected to the refusal of the court to so instruct. It also objected to the submission of the assumption of risk and to the exclusion of evidence relating to the feasibility of the use of safer equipment by Dowell to rebut and impeach the testimony of one of Dowell's witnesses in that respect. Dowell and Phillips earnestly insist that they were entitled to a directed verdict upon the contractor's evidence. And, it goes without saying that if the contractor did not make out a case for the jury, it was not entitled to any instructions. Dowell and Phillips' theory is twofold. First, they invoke the provision in the drilling contract between the contractor and Phillips whereby the contractor agreed to 'assume and bear all risk of accidents and damages to persons and property which may occur in the course of contractor's operations * * * and to indemnify and hold (Phillips) harmless against or on account of such accidents and damages.' And further 'all risk and damage to drilling tools, machinery, appliances, derricks or equipment from whatever causes shall at all times be assumed and borne by contractor * * *.' They say that these provisions of the contract not only operated to save Phillips harmless from all risk of accidents and damages to persons and property which may occur in the course of the contractor's operations, but that it was also made and entered into for the benefit of Dowell, and operated to exonerate it from any liability to the contractor, even for its own negligence.
 
 
 9
 Applicable New Mexico law sanctions exculpatory clauses in contracts of this kind, whereby one party covenants to hold another harmless and to indemnify him against loss caused by him own negligence if, and only if, the intention to do so is 'clear and unequivocal.' Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, 66 N.M. 41, 341 P.2d 460, 463. And see also Fosson v. Ashland Oil & Refining Co., Ky., 309 S.W.2d 176; Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128; Standard Ins. Co. of N.Y. v. Ashland Oil & Refining Co., 10 Cir., 186 F.2d 44; Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 175 A.L.R. 1; Annotation,175 A.L.R. 8. And, we take it that the contracting parties may likewise contract for the benefit of a third party beneficiary, if the intention to do so is either expressed or manifestly implied. See Hamill v. Maryland Casualty Co., 10 Cir., 209 F.2d 338; Coleman v. Mountain Mesa Uranium Corp., 10 Cir., 240 F.2d 12; Johnson v. Armstrong & Armstrong, 41 N.M. 206, 66 P.2d 992.
 
 
 10
 But, exculpatory clauses in contracts of this kind are not favorites of the law. They are strictly construed against the promisee and will not be enforced if the promisee enjoys a bargaining power superior to the promisor, as where the promisor is required to deal with the promisee on his own terms. Mohawk Drilling Co. v. McCullough Tool Co., 10 Cir., 1959, 271 F.2d 627. Nor will a contract be enforced if it had the effect of exempting a party from engligence in the performance of a public duty, or where a public interest is involved. Hall v. Sinclair Refining Co., 242 N.C. 707, 89 S.E.2d 396, 398. The trend of modern decisions is toward further limitations on the rule which sanctions such clauses in contracts like ours. And, it is derived 'from a liberalization of the judicial concept of what constitutes sound public policy.' Hall v. Sinclair Refining Co., supra. See also Mohawk Drilling Co. v. McCullough Tool Co., supra.
 
 
 11
 The drilling contract between the contractor and Phillips clearly and unequivocally bound the contractor to assume the risk of loss or damage to his equipment; and it also bound the contractor to hold Phillips harmless for any loss or damages which might occur in the course of the performance of the contract. From this 'all-embracing language,' i.e. see Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, supra, it is fair to say that the parties clearly intended to exempt and indemnify Phillips from any liability arising out of the performance of the contract, even against its own negligence. The drilling contract did contemplate that third parties would perform specialized services during the course of the contract. But that does not mean, nor do we think it can be fairly inferred, that Phillips intended to thereby insulate all such third parties from any liability for negligent conduct while performing the contemplated specialized services. It is clear that Phillips was concerned with self protection against risk of accidents or damages to persons or property occurring in the course of the contractor's performance of his contract. In other words, the contractor assumed the risk of his own operations and agreed to hold Phillips harmless therefor. We agree with the trial court that the parties to the drilling contract did not intend to save third parties like Dowell harmless from their own negligent conduct, especially when they were in no way connected with the contractor's operations.
 
 
 12
 Dowell also invokes clauses in its rental receipt or lease agreement with Phillips, providing that 'Dowell's liability for injury to person or damage to property is limited to that occasioned by its own lawful misconduct or failure to exercise good faith, and customer (Phillips) shall secure Dowell against loss or damage not expressly accepted by Dowell.' Dowell says in this connection that inasmuch as it is thus entitled to indemnity from Phillips for any liability to the contractor, and Phillips is absolved of any liability to the contractor, any recovery against Dowell would in reality be recovery against Phillips, and the contractor can therefore in no event prevail.
 
 
 13
 The validity of the exculpatory clauses in the Dowell-Phillips agreement is not before us, hence we have no occasion to decide whether the relative bargaining powers of the parties were such as to deny enforceability, i.e. Mohawk Drilling Co. v. McCullough Tool Co., supra. But in any event, we do not think the two contracts can be construed together to effect a circuity of rights and liabilities so as to exempt Dowell from any liability to the contractor for its own negligent conduct. In the first place, the drilling contract between Phillips and the contractor was entered into before the Dowell-Phillips agreement. Neither was in privy with the other; they were in no wise connected with respect to rights and duties to be imposed. Each stands upon its own footing independently of the other. We agree with the trial court that Dowell was not contractually exempted from loss or damage to the contractor caused by Dowell's negligence.
 
 
 14
 This brings us to theappellant's objections and exceptions to the court's instructions. Either before or at the close of the evidence, both sides submitted extensive requested instructions, and they were discussed informally at a conference of court and counsel. After advising counsel concerning the instructions he proposed to give, the court proceeded to instruct the jury by abstractly defining preponderance of evidence, burden of proof, proximate cause, negligence, contributory negligence, unavoidable accident, and assumption of risk. The case was submitted to the jury without any instructions or statement concerning the legal or factual issues involved in the lawsuit.
 
 
 15
 After the instructions, and before the jury retired, each party objected to the court's instructions, generally stating the grounds therefor. And see Rule 51 F.R.Civ.P., 28 U.S.C.A.; Downie v. Powers, 10 Cir., 193 F.2d 760. On appeal the appellants complain of the refusal of the court to give any of their requested instructions on their various theories of the case, and in giving abstract instructions on the subject of negligence in lieu thereof. Specifically, the appellants complain of the refusal of the court to advise the jury that in determining the question of Dowell's negligence, they had a right to consider whether or not its employees failed: (1) to take precautions commensurate with the nature of crude oil. (2) To use a frack head which was equipped with a check valve to prevent the escape of oil or to use a nipple of sufficient size and strength or to adequately support the weight of the valve and other piping which was attached to the nipple. (3) To shut off the motor of the ball injector pumping truck or to remain at their stations and duties either before or after the nipple broke. (4) To place the ball injector pumping truck at a safe distance from the well head. (5) To make an adequate inspection or test of its nipples or a test of its lines and valves up to the valve adjacent to the frack head nipples. (6) To equip the ball injector pumping truck with controls permitting emergency immediate shut down. (7) To observe defendant's own safety instructions and regulations. It seems safe to say that there was competent evidence tending to support the legal and factual issues posed by these requested instructions. And, it is also true that the trial court failed and refused to instruct the jury on any of these issues.
 
 
 16
 It has always been the law governing jury trials in federal courts that 'no court is bound to give instructions in the form and language in which they are asked. If those given sufficiently cover the case and are correct, the judgment will not be disturbed, whatever those may have been which were refused.' Railway Co. v. McCarthy, 96 U.S. 258, 265, 24 L.Ed. 693. See also District of Columbia v. Woodbury, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472; Thiringer v. Barlow, 10 Cir., 205 F.2d 476; Employers Liability Assurance Corp. v. Freeman, 10 Cir., 229 F.2d 547; Messer v. L. B. Foster Co., 5 Cir., 254 F.2d 412. Indeed, we know as a practical matter that most requested instructions are colored with the advocate's view of his client's cause, and cannot fairly be given in the requested language. Downie v. Powers, supra. 'Once the judge has made an accurate and correct charge, the extent of its amplifications must rest largely in his discretion.' United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654. See also Chicago, Rock Island & Pacific Railroad Co. v. Emery, 8 Cir., 233 F.2d 848.
 
 
 17
 But even so, jury trials in federal courts are conducted as at common law when the Constitution was adopted, under which the judge is the governor of the trial, with the inescapable duty to fully and correctly instruct the jury on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth. See Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; Minner v. United States, 10 Cir., 57 F.2d 506; United States v. Marzano, 2 Cir., 149 F.2d 923; Billeci v. United States,87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881. This duty is not fulfilled by mere abstract statements or legal definitions, but rather by a fair and impartial statement of the factual issues and the law applicable thereto. The instructions ought to be stated in logical sequence and in the common speech of man if they are to serve their traditional and constitutional purpose in our system of jurisprudence. See Downie v. Powers, supra. Indeed, the judge may go so far as to comment on complicated facts and issues, provided he makes it plain that the jury is the trier of the facts and that they are perfectly free to form their own opinion of the facts and apply them to the law of the case. See United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Billeci v. United States, supra; Quercia v. United States, supra.
 
 
 18
 In our case, the issues were complicated and the evidence fraught with conflict. Confusion and doubt in the minds of the jury is evidenced by the fact that on two occasions they returned to the courtroom for clarification on the law of negligence; and on two other occasions the court undertook to further clarify the issues. After an 'unfortunate' example on assumption of risk, the court confessed that he was 'bogged down in his own morass.' In these circumstances, we are convinced that the jury did not have a clear grasp of the triable issues and the law applicable thereto.
 
 
 19
 The appellants specifically complain of the submission of the defense of assumption of risk. They say that it was neither legally justified nor factually supported. The trial court finally instructed the jury that in this case the assumption of risk could not rest on contract, and indeed, there was no contractual relationship between the contractor and Dowell. They say further that the defense could rest only on a master and servant relationship, which admittedly does not exist in this case. 'It seems to be quite generally understood that the doctrine of assumption of risk is confined to cases arising out of the relation of master and servant.' Rutherford v. James, 33 N.M. 440, 270 P. 794, 796, 63 A.L.R. 237. And see also Swift & Co. v. Schuster, 10 Cir., 192 F.2d 615; Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128. On one occasion, when the jury sought additional instructions or clarification, they were interested in assumption of risk. And, the court redefined it as where one 'freely, voluntarily and knowingly manifests his assent to dangerous conduct, or to the creation or maintenance of a dangerous situation or condition, and voluntarily exposes himself to that danger, or when he knows, or in the exercise of ordinary care would know that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself or his property or remains or keeps his property within the area of danger.'
 
 
 20
 The appellees seem to agree to the doubtful applicability of the assumption of risk in cases like ours. But, they say that the kindred doctrine of volenti non fit injuria is applicable and that the court's instruction was in conformity therewith. Courts have difficulty drawing the fine line between assumption of risk, contributory negligence, and volenti non fit injuria, i.e. see Swift & Co. v. Schuster, supra. And certainly we should not expect the jury to be more discriminatory. Applying the law of Utah, we have recognized the applicability of volenti non fit injuria in noncontract and nonemployment relationship cases, and we have simply stated it as meaning that 'one who voluntarily exposes himself or his property to a known or appreciated danger, due to negligence of another may not recover for injuries sustained thereby.' See Schuster, 192 F.2d at page 617. See also Cummins v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 319 S.W.2d 379.
 
 
 21
 We are not certain whether New Mexico has recognized the doctrine of volenti non fit injuria separate and apart from assumption of risk and contributory negligence, or as a species of either or both of them. It does seem, however, that the New Mexico court has recognized and adheres to the proposition that an intentional and unreasonable exposure of one's self or his property to a danger created by the negligence of another is barred from recovering therefor. Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775, citing 2 Restatement Torts, 466 on contributory negligence. In any event, the jury is entitled to know the legal difference, if any, between contributory negligence, assumption of risk and volenti non fit injuria, and particularly how they are to be applied to the facts in this case.
 
 
 22
 Since, in our judgment the case must be retried, we leave these fine distinctions involving local law to the trial court. We know of course that in any event, they are affirmative defenses to be proven as such. And, it seems to be an established fact that at the time of the fire and resultant loss, the contractor was standing by on a day basis. There is nothing to indicate that he in any way participated in the fracking operation, which was under the immediate control of Dowell and the general direction of Phillips. But it may be that as an experienced operator in the oil fields, the contractor should have appreciated the danger of exposure to the fracking operation and moved his equipment. On the other hand, the evidence is not clear whether he was free to move it or whether he was required to leave it for the completion of his contract after the fracking operation. These are matters in the first instance for the court and jury and we cannot say on this record whether an instruction on contributory negligence, assumption of risk or volentinon fit injuria was improper, and we leave it for reconsideration on retrial.
 
 
 23
 Finally we come to the question whether the court erroneously excluded proffered evidence to the effect that Dowell changed the model and design of the nipples on its frack head after the accident. The general rule is that evidence of a change in conditions or proof of repairs made after an injury is inadmissible to prove antecedent negligence. See Annotation, 170 A.L.R. 7; II Wigmore, 3d Ed., 283, p. 151. There are many exceptions to the rule, among which is the view that such evidence is admissible in rebuttal, or as going to the credibility of testimony of defense witnesses on the issues. Annotation, 170 A.L.R. 7, supra, III, p. 36. The appellants insist that such testimony was proffered and was admissible for that very purpose and no other.
 
 
 24
 On direct examination of Dowell's station manager, and contractor elicited from him the statement to the effect that it would not be feasible to have used an extra heavy nipple on the frack head in the place of one which failed, and the witness gave his reasons therefor. And, the same witness was interrogated concerning the feasibility of the use of a check valve in the frack head which would have shut off the backward flow of the oil when the nipple broke. The witness seemed to agree that the check valve in the frack head would have shut off the backward flow of the oil, but denied that it would have been feasible to use it in this case. The excluded testimony was offered in rebuttal to show that it was feasible to have used the larger nipple and check valve, and we think the trial court might well have admitted this particular testimony for that limited purpose without invading the general exclusionary rule, or without impinging upon the substantive standard of ordinary care. Cf. Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598. The witness whose testimony appellants sought to impeach or rebut was called by them but he was an adverse party-- Dowell's station manager-- under Rule 43(b) and it was permissible to 'contradict and impeach him in all respects as if he had been called by the adverse party, * * *.' Rule 43(b) F.R.Civ.P.
 
 
 25
 The judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed.