**McNEIL CONSTRUCTION COMPANY, a Corporation, Appellant,**

**v.**

**The LIVINGSTON STATE BANK, a Montana State Bank, Appellee.**

**No. 17102.**

United States Court of Appeals Ninth Circuit.

Feb. 5, 1962.

Rehearing Denied May 10, 1962.

CHAMBERS, Circuit Judge.

It seems to be agreed that in September, 1956, a former employee of McNeil, using stolen blank payroll checks of McNeil, made out to himself some 29 of them, forged the signature of someone authorized to sign the checks, and cashed them. The total was $4,148.16. The checks were all drawn on McNeil's account at the Livingston State Bank. In the regular course of business, the bank cashed the checks and charged them to the account of McNeil, a California corporation.

Seaboard Surety Company, a New York corporation, bonding company for McNeil on the latter's employees' fidelity bond, after claim was filed by McNeil, promptly remitted the amount of the loss, taking from McNeil a loan receipt.

Apparently the bank denied liability for the total sum of $4,148.16 it had charged McNeil. On May 1, 1957, McNeil [1] sued the bank for the amount of the forgeries, asserting a claim in excess of $3,000, the then required amount for diversity jurisdiction. Its first complaint was dismissed (McNeil Construction Co. v. Livingston State Bank, D.C., 155 F.Supp. 658) with leave to amend. A second complaint was filed in which it was stated alternatively that McNeil was the trustee of an express trust. Again a motion to dismiss was sustained. An appeal followed. A division of this court reversed, McNeil Construction Co. v. Livingston State Bank, 9 Cir., 265 F.2d 308. The holding was that the complaint could be taken as one stating a cause of action for debt and that all matter concerning Seaboard in the complaint should be stricken as surplusage.[2]

Back in district court, the bank moved for summary judgment, setting up by affidavit the surety bond to McNeil of

Anderson, Symmes, Forbes, Peete & Brown, by Weymouth D. Symmes, Billings, Mont., for appellant.

Luxan & Scribner, Helena, Mont., A. W. Scribner, Helena, Mont., of counsel, for appellee.

Before CHAMBERS and HAMLIN, Circuit Judges, and FOLEY, District Judge.

1. The insurance carrier may prefer to sue in the insured's name without showing its own face because its business is paying losses, while that is not the business of the one normally insured. Thus, the insured is supposed psychologically to present a better face to the court or jury. Also, sometimes certain equities often favor the injured which do not favor the insurer. However, here it is disclaimed that McNeil would seek any advantage not available to Seaboard.

2. As a consequence of this court's first decision, it can be said that any theory of express trust is out of the case.

Seaboard and the loan receipt. Thus, it raised, as it had before, the defense that McNeil was not the real party in interest. The trial court granted the motion. McNeil Construction Co. v. Livingston State Bank, D.C., 160 F.Supp. 809. (This opinion assumes one's familiarity with the three reported decisions mentioned hereinabove.)

Now the case is here again. And, we must decide what were the legal consequences of the loan receipt. The receipt did not make the sum of $4,148.16 or any part thereof repayable except on condition of McNeil's recovery from someone (presumably the employee-forger or the bank) and Seaboard was authorized to sue in McNeil's name.

Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States." [3]

The appellant McNeil is probably right that the weight of authority is that a loan receipt insulates the insurer from the necessity of seeking to recover the loss in its own name and permits it to act in the insured's name.[4]

■ But the district court has relied on Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060, to reach the conclusion that McNeil, under Montana law, had no interest left in the claim against Livingston; and, therefore, only Seaboard could be the real party in interest.[5] The district judge believes that Rae means that the loan receipt here (because the "loan" was not repayable at all events, but on condition of recovery) did not evidence a loan. The second unexpressed step in the reasoning is that the remittance from Seaboard to McNeil (to make good the shortage) was payment. If we grant that the remittance was not a loan, the second step follows. If not a loan, what else could it be but payment?

We are impressed with appellant's argument that perhaps the Rae case might not require the result reached here. Examination of the Rae case will show that it is not exactly the same case as McNeil's. But we cannot convince ourselves that the district court has misread Rae in its conclusion that Rae, unless repudiated, has predicted the course for the Montana Supreme Court to find that McNeil had nothing left in the claim to be the real party in interest. We are not convinced the district court was clearly erroneous in its appraisal of Rae.

■ We have examined all cases cited by the parties and a great many more. We are aware of the special line of cases where the insurance is written on a basis of "if you can't get paid from someone else, we will pay you." This situation occurs most frequently in the carriage of goods. Perhaps it is in that field that the loan receipt was first developed. It may be that there is greater liberality in permitting the insurance company to proceed in the name of the insured, if it "loaned" the amount of the claim and was not obligated yet to pay.[6] (The

---

3. Obviously, Rule 17(a), F.R.C.P., could have been more specific and the effect of a loan receipt on who is the real party in interest could have been stated. But weighting the rule down with examples would probably have produced more trouble than its general language does.

4. 3 Moore. Section 17.09, p. 1349, fn. 35; 157 A.L.R. 1261, 1263.

5. Who is the real party in interest seems to involve a mixed question of state substantive and federal procedural law. First, the state law is looked at to see who "owns" the claim.

6. See, e. g. Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S. Ct. 53, 63 L.Ed. 170.

logic of making a distinction if the receipt always reads the same is a little difficult.) Here the bank asserts that Seaboard at all events was liable to pay when the shortage was discovered. This McNeil has not contested. Perhaps it might have if it had filed a reply brief.

Throughout the proceedings Livingston had a motion to make Seaboard a party plaintiff. Neither party appears to have pressed for a ruling on the motion. Apparently, in taking summary judgment Livingston waived it.

The district court, holding the view it did, on its own motion might well have taken the reverse course of what was done in Hartford Fire Insurance Co. v. Commercial Union Assurance Co., D.C. N.Y., 131 F.Supp. 751, when the trial court granted leave to bring in the insured instead of the insurer, after it concluded the wrong party had brought the suit. But McNeil has not assigned such failure as error. Thus, we do not reach the point.

While we may regret the result, it seems unavoidable in the posture of the case here.

The judgment is affirmed.

FOLEY, District Judge, concurs in the foregoing opinion.

HAMLIN, Circuit Judge (concurring).

I concur in the above opinion. However, I feel that it is necessary to briefly underscore what seems to me to be the essential basis of the decision in this case. The key to who is the real party in interest in a case similar to this one depends on the effect given to the loan receipt transaction between the insurer and the insured by the applicable state law.

Insurers who become subrogees of the rights of their insureds by the payment of claims are real parties in interest who must, in accordance with Rule 17(a) of the Federal Rules of Civil Procedure, prosecute actions to recover the amount of such claims in their own names. See, e. g., United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed.

171 (1949). To become a subrogee the insurer must have paid the claim of his insured. Whether the claim has been paid by the issuance of a loan receipt whereby the insured is obligated to repay the "loan" only if the claim is recovered from a third party is a question of state law. E. g., Tyler v. Dowell, Inc., 274 F. 2d 890 (10th Cir. 1960). If under the state law a loan receipt is evidence of a true loan then the insurer has not "paid" the insured's claim and is not a subrogee who, under the federal procedural law, is required to prosecute an action for recovery of the claim in its own name as the real party in interest. See, e. g., Western Fire Ins. Co. v. Word, 131 F.2d 541 (5th Cir. 1942); Oliff v. Mount Vernon Seminary, Inc., 22 Fed.R.Serv. 234 (D.C.D.C.1956); Hartford Fire Ins. Co. v. Commercial Union Assur. Co., 131 F.Supp. 751 (D.C.S.D.N.Y.1955). If, on the other hand, the state law is that a loan receipt is not a loan but is really payment of the insured's claim (subject to being refunded upon a subsequent condition) then the insurer is the real party in interest under the federal procedural law. E. g., Tyler v. Dowell, Inc., supra.

Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060 (1941), has established, to our satisfaction, that in Montana the issuance of a loan receipt under the present law amounts to payment of the insured's claim. Thus, Seaboard Surety Company in this case is a subrogee who is required to prosecute the action against the bank for recovery of the sums allegedly due to McNeil in its own name as the real party in interest. It should be emphasized, however, that should Montana decide to uphold the validity of the loan receipt as a shield against disclosure of the insurer as a party and hold that the loan receipt is not payment the opposite result of that reached in this case would be reached in future cases involving the same question in that jurisdiction. Needless to say, the result to be reached in other cases concerning the effect of loan receipts as to who is the real party in interest will depend on the particular state law there in question.